THE STATE *ex rel.* ATTORNEY GENERAL v. THE MISSOURI PACIFIC RAILROAD COMPANY.

### Division One, February 27, 1893.

1. **Mandamus:** MOTION TO ENFORCE PRIOR WRIT. Where a motion for a peremptory *mandamus*, filed in October, 1891, asks that respondent railway company be compelled to restore certain trains, charged to have been wrongfully abandoned and discontinued by it in violation of a final judgment rendered in October, 1883, awarding a peremptory writ of mandamus commanding said respondent to run such trains, alleges that respondent, prior to June, 1890, had fully executed all of the specific requirements of that judgment and seeks relief for alleged failure of respondent since the last named date to discharge

its duties as ascertained and fixed by such judgment, it will be regarded as an original application for a writ of *mandamus* and not an adjunct to the original one.

2. ———: PRACTICE. On an application for a writ of *mandamus* the respondent cannot raise the objection that the application does not state facts sufficient to authorize the issuance of an alternative writ, but all issues, whether of law or fact, must be raised and determined upon the return to the alternative writ.

### *Mandamus.*

ALTERNATIVE WRIT AWARDED.

*John M. Wood,* Attorney General, for relator.

The statute provides "a peremptory writ of *mandamus* shall be granted, without delay, for him for whom judgment shall be given, as might if such return had been adjudged insufficient." Revised Statutes, 1879, sec. 3260; Revised Statutes, 1889, sec. 6817. By section 600, Revised Statutes, 1889, it is provided that "executions may issue upon a judgment at any time within ten years after the rendition of such judgment." Revised Statutes, 1879, sec. 2739. From these provisions of statute it follows that if the judgment of *mandamus* is being violated, or has not been complied with, the plaintiff has a right as of course to a writ such as will enforce obedience to the judgment. High on Extraordinary Legal Remedies [2 Ed.] sec. 567, p. 436.

*H. S. Priest* for respondent.

However great may be the efforts to disguise the fact, this motion stands forward preeminently as a new ground of action. The judgment in the original proceeding was final and not alterable, and the only thing which the court could thereafter do would be to make such orders as would compel obedience to its mandates. It is conceded by the motion that the

respondent did what the judgment in the principal case commanded it to do; namely, restore and operate the railroad. How many trains the respondent should run upon the road, after it should be restored, was not determined in the principal case, nor does there appear to have been any effort to determine such a question, if the court would have undertaken to determine it. If such a purpose had been in the mind of the court, it would undoubtedly have fixed some standard by which defendant would measure its conduct in complying with the judgment and mandate. The motion should be denied, *first*, because, the original judgment having been complied with, it is *functus officio*; and *second*, if the matter were properly before the court, it could not and would not grant the writ.

BRACE, J.—In an original proceeding by *mandamus* in this court at the relation of the attorney general against the defendant, a final judgment was rendered at the October term, 1883, of said court, and a peremptory writ of *mandamus* awarded to the plaintiff directed to the respondent, the Missouri Pacific Railway Company, commanding it on "or before the thirtieth of November, A. D. 1884, to rebuild and reconstruct the line of railway between Independence and Kansas City, in Jackson county, Missouri, heretofore taken up by the respondent for the purpose of changing its gauge from a narrow to a standard gauge, and for making certain changes in its roadbed and road line, and to extend the standard gauge road (already constructed from Lexington to Independence, Missouri) from the latter place to Kansas City, and to rebuild and reconstruct the same as a standard gauge railroad, along and upon the line already located by respondent, and which line so located is as follows, to-wit:" (Description of line here follows.)

"And to equip and furnish the same with cars and rolling stock of all kinds and descriptions necessary and required for the proper and convenient running, operating and maintaining of the same for the convenience of the public in the carrying of persons and property over the same and to supply the same with all officers, persons, servants and things necessary or requisite for the operating, running and maintaining of the same for the use, benefit and convenience of the public, and to run, operate and maintain the same for the use, benefit and convenience of the public, in the conveyance of persons and property, and for the purpose of traffic and travel and in full and fair compliance with all and singular respondent's duties, obligations and liabilities in the premises. And the court doth further order and adjudge that plaintiff have and recover of respondent its costs herein expended and have thereof execution." .

At the October term, 1891, the relator filed his motion, reciting the judgment aforesaid and alleging that said respondent "did rebuild and reconstruct said line of railroad substantially as required by said judgment, but that it has not equipped or furnished said railroad with cars or rolling stock sufficient, nor such as is required for the proper or convenient running, operating or maintaining of the same for the convenience of the public in the conveyance of persons and property over the same, nor with things necessary or requisite for the proper operating, running or maintaining of the same for the use, benefit or convenience of the public in the conveyance of persons and property or for the purpose of traffic or travel. And plaintiff says that there is along said line of railroad a large and increasing population of citizens, taxpayers and inhabitants of the townships of Blue and Kaw in Jackson county, Missouri; that said persons are

dependent upon said railroad for means of conveyance of their persons and property to said cities of Independence and Kansas City, and have no other fit, suitable or convenient means of conveyance from their place of residence to and from said cities of Independence and Kansas City, save and except over and along said railroad, and especially is this true of that part of said population living along said line of railroad, in that part of said Kaw township usually and popularly called the East Bottoms of Kansas City; that said city of Independence is the county seat of said Jackson county, and the business to be transacted by said persons at both said cities of Independence and Kansas City is large and increasing, and the demand and necessity for fit, suitable and convenient means of conveyance of persons and property is urgent and pressing; that respondent has established along its said line of railroad, to-wit, ten regular stations or stopping places for the use, benefit and convenience of the public generally, and of said persons in particular, and, prior to the month of June, 1890, respondent ran on said line of railroad between said cities of Independence and Kansas City three daily passenger trains each way for the use, benefit and convenience of the public generally, and said persons in particular; that said trains afforded convenient means to said persons for the conveyance of their persons and property to and from their said places of residence, from and to said cities of Independence and Kansas City, and were largely patronized and used by said persons for said purposes, and became and were a public necessity for said purposes and are still necessary for said purposes."

But plaintiff says that respondent, on or about said month of June, 1890, in violation of its duty as a common carrier of persons and property for hire, and in violation and disregard of said judgment of this court

rendered in said cause, wholly abandoned and discontinued the running of said trains and has since said time hitherto wholly failed, neglected and refused to run the same, to the great injury, damage and inconvenience of the public generally and of said persons in particular; that the only train run by respondent on said railroad is a daily passenger train each way, which respondent runs between said Kansas City and the city of Sedalia, Missouri, by way of the city of Lexington, Missouri, and said city of Independence; that said last mentioned train is run at an inconvenient and unsuitable time, to-wit: early in the morning and late at night, and does not stop regularly at said stations between said cities of Independence and Kansas City, and wholly fails to furnish fit or convenient means for the use benefit and convenience of the public and particularly of said persons in the conveyance of persons and property and for purposes of traffic and travel.

"Therefore, plaintiff prays that a peremptory writ of *mandamus* may issue commanding respondent to restore said trains wrongfully abandoned and discontinued by it as aforesaid and to in all things comply with said judgment of this court rendered in said cause."

To this motion respondent at the October term, 1891, filed the following exceptions:

"*First*. For that it does not state facts sufficient to constitute a ground for the relief sought.

"*Second*. For that the relief prayed for is not germane to the original proceeding in this cause.

"*Third*. That this cause was terminated by the entry of the judgment hereinbefore entered. .It is an action at law and not supervisory in nature.

"*Fourth*. That the proceedings cannot be employed to the purposes sought by this motion."

It seems that no peremptory writ was ever issued from the office of the clerk of this court on the afore-

said judgment.   If, however, such writ had been issued or was now to be issued, it could only follow the judgment and formally require the execution of the command therein recited.   The judgment was a final one and cannot now .be altered or modified, and as it appears upon the face of the motion that the respondent, prior to June, 1890, had fully executed all thespecific requirements of that judgment, and by the present motion seeks for relief, the right to which arises from the alleged failure of the respondent since that date to discharge its duties as ascertained and fixed by that judgment and the law of the land, it must be regarded as an original application for a writ of *mandamus*.   To this application the respondent voluntarily appears and by its exceptions raises the question whether, upon the facts stated in the motion, a *prima facie* case is made authorizing the issue of an alternative writ?

While formerly this practice seems to have obtained at common law, the rule being that if it be perfectly apparent that the relator is not entitled, the writ was refused, but if it appeared only doubtful, the writ was granted (Moses on Mandamus, pp. 201, 202), in this court such practice is without precedent.   It is customary with us to have all issues whether of law or of fact raised and determined upon the return to the alternative writ, and we see no good reason for departing from this rule in this case.

We deem it unnecessary to say more now upon the other questions argued in the brief of counsel.   We say this much only for the purpose of removing any idea that may have been entertained that this proceeding could be considered an adjunct to the preceding one which was finally closed by judgment, and the execution thereof.

An alternative writ of *mandamus* will issue in accordance with the prayer of the relator.   All concur.