STATE OF MISSOURI at the Relation of P. A. TATE, Relator, v. NIKE G. SEVIER, Judge of the Cole County Circuit Court.—68 S. W. (2d) 50.

Court en Banc, February 13, 1934.

*Gus O. Nations* for relator.

*H. P. Lauf, Joseph T. Davis* and *Allen C. Orrick* for respondent.

FRANK, J.—Mandamus: The Fifty-Seventh General Assembly enacted, and the Governor approved House Bill 23 (Laws 1933, p. 256) relating to the manufacture, transportation, sale and inspection of nonintoxicating beer. The bill passed with an emergency clause and was approved on March 15, 1933. Thereafter and within the time provided by statute, petitioner on July 21, 1933, tendered to the Secretary of State for filing a petition asking that House Bill 23 be referred to the people for their adoption or rejection at the election to be held on November 6, 1934, as provided by the initiative and referendum provisions of the Constitution and statutes of the State. The Secretary of State refused to accept or file the petition so tendered. Thereafter, on July 26, 1933, petitioner filed a petition in the Circuit Court of Cole County, of which respondent is judge, praying said court to issue its alternative writ of mandamus commanding the Secretary of State to receive and file said referendum petition or show cause why he should not do so, and requested that said cause be advanced and heard and determined without delay, as provided by law, and that a peremptory writ of mandamus be issued commanding said Secretary of State to accept and file said referendum petition, and for all further necessary relief.

Respondent judge, on July 29, 1933, by order entered of record, refused to issue an alternative writ and dismissed the petition therefor. Thereafter, on the same day, July 29, 1933, petitioner sought the intervention of this court through a petition asking that we issue our writ of mandamus commanding and requiring respondent judge, to set aside the order dismissing aforesaid cause and reinstate said cause on the docket, to issue an alternative writ of mandamus to the Secretary of State commanding him to accept and file said referendum petition or show cause why he should not do so, to advance said cause on the docket of said circuit court, and to hear and de-

termine same without further delay. We issued our alternative writ. Respondent made return thereto to which relator replied, and the cause was submitted on the pleadings.

Petitioner's theory, as revealed by the pleadings, is that no emergency existed within the meaning of the Constitution and laws of the State, calling for the passage of House Bill 23, and for that reason such law is subject to the referendum in spite of the emergency clause attached thereto.

Respondent judge's theory, as revealed by his return to our alternative writ, is that an emergency did exist within the meaning of the Constitution and laws of the State, which authorized the General Assembly to pass House Bill 23 with an emergency clause, and for that reason such bill became an effective law from and after the date of its passage and approval, and therefore, is not subject to referendum.

Petitioner contends that it was the mandatory duty of respondent judge to issue an alternative writ upon the filing of the petition therefor, and his refusal to do so was an arbitrary abuse of power and a willful refusal to exercise the jurisdiction of the court. On the other hand, respondent judge contends that he did exercise jurisdiction in the case; that he gave petitioner a hearing on his application for the writ; that after the matter of issuance of the alternative writ was duly presented and argued in open court, and after duly considering same he entered of record an order refusing the alternative writ and dismissing the petition. The opposing contentions of the parties must be determined by the facts appearing in the pleadings, and the law applicable to such facts.

Respondent's return contains, among others, the following allegation:

"That the petitioner herein filed his application for a writ of mandamus directed to Honorable DWIGHT H. BROWN, Secretary of the State of Missouri, before your respondent, as Judge of the Circuit Court of Cole County, Missouri, on the 26th day of July, 1933, and requested the immediate issuance of an alternative writ. Your respondent, instead of issuing said alternative writ immediately, directed the petitioner herein to give notice to the Secretary of State and all parties interested, and then set said matter on his docket for the 29th day of July, 1933, and also notified the petitioner that on said date the petitioner could present such matters of fact and law and that the same would be heard and given due and deliberate consideration.

"That on the 29th day of July, 1933, said petitioner, through his counsel, Gus O. Nations, Esquire, and H. P. Lauf, Esquire, counsel for certain interveners, apppeared before your respondent, as Judge of the Circuit Court of Cole County, Missouri, in open court, where the matter of the issuance of an alternative writ, as prayed for by

the petitioner, was fully presented and argued. After giving due weight and consideration to all of the facts and circumstances, as well as the law applicable, and arguments presented, your respondent made and issued, in the sound discretion of the court, an order of record in said cause as follows:

" 'Issuance of alternative writ denied and refused and petition dismissed.' . . .

"Your respondent, in hearing the instant case based upon said application for a writ of mandamus, besides giving careful and due consideration to the law involved, based upon the facts presented by the application, also gave due consideration to certain facts which were and are of common and general knowledge, which facts were taken judicial knowledge of by the court, and which facts were of such common and general knowledge that the Legislature of the State of Missouri had before it when it considered and determined the necessity for the emergency clause herein complained of. . . .

"That an emergency existed with the meaning of the law and the Constitution of Missouri at the time of the passage of said bill by the Legislature of Missouri, not only for the reasons already assigned but also for the following reasons: . . ."

The return further pleads facts of which respondent judge took judicial notice, as well as his reasons for concluding that House Bill 23 was not subject to the referendum, but in our view, a consideration of such facts and reasons are not necessary to a determination of the questions presented here, so we will not review them.

It appears from respondent's return to the writ that he gave relator a hearing in open court on his application for the writ, and after giving the matter due consideration refused to issue the alternative writ and dismissed the petition on the ground that in his judgment House Bill 23 was not subject to the referendum.

These facts are not denied by relator in his reply to the return to the alternative writ. As evidence of relator's failure to deny these facts, we call attention to his reply which reads as follows:

"Relator admits as alleged in respondent's return, that he filed and presented to respondent his petition and application for writ of mandamus on July 26, 1933, and that on July 29, 1933, respondent refused to issue the alternative writ. Relator denies that at the adoption of House Bill No. 23, or at any time prior or subsequent thereto, any emergency or condition existed which made said act necessary for the immediate preservation of the public peace, health or safety. Further replying relator specifically denies each and every allegation of fact contained in said return, except such as are herein specifically admitted."

The admission in relator's reply that the issuance of the alternative writ was refused, "as alleged in respondent's return" necessarily means that the writ was refused after hearing and consideration of

the application therefor in open court, because it is so alleged in the return.

The further allegations of the reply that "relator specifically denies each and every allegation contained in said return, except such as are herein specifically admitted," is not a good pleading. "It is neither the general nor special denial which our statute calls for." [Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 279, 75 S. W. 1102, and cases cited.] The recognition of an answer or reply which denies each and every allegation not specifically admitted would require the court to go through the pleading to determine what is and what is not admitted therein. This task, the court declines to assume. Pleadings should be so framed as to form definite and specific issues. [Long v. Long, 79 Mo. 644, 649.] Moreover, if that part of the reply should be treated as a proper pleading, it does not purport to deny facts which the reply specifically admits. The reply in this case specifically admits that relator was given a hearing in open court on his application for the writ, and after due consideration of all the facts and circumstances and argument of counsel, as well as the law applicable thereto, respondent refused to issue the alternative writ and dismissed the petition. These facts being undenied by the reply, must be accepted as true. [State ex rel. v. Douglas County, 148 Mo. 37, 42, 49 S. W. 862.] ■ This conclusion brings us to the question whether or not the refusal to issue an alternative writ of mandamus after a hearing in open court on the application therefor is a refusal to exercise jurisdiction in the case. Otherwise stated, is it the mandatory duty of a court to issue an alternative writ in all cases, or does the court have jurisdiction to refuse to issue the alternative writ, where, in its judgment, the petition does not show prima facie a cause for the issuance of a peremptory writ?

It is our judgment that an alternative writ should never issue unless the petition for the writ states facts which, if true, would authorize the issuance of a peremptory writ. If an alternative writ were issued on a petition which did not show prima facie a cause for the issuance of a peremptory writ, and the respondent should fail to appear or make return to the alternative writ, the court would be compelled to quash the alternative writ, because, in that situation, there would be no facts before the court which would authorize the issuance of a peremptory writ. Such a proceeding would be a useless ceremony. Courts do not sit to do useless things. An alternative writ of mandamus is a command of a court to the party against whom the writ is issued, to perform certain specified acts or appear and show cause why he should not do so. Such a command should not issue without a showing of just cause therefor. Neither a public officer nor a private citizen should be put to the expense of employing counsel and making return to an alternative writ issued on a petition which does not state facts which, if true, would entitle the

party to the relief asked for in the petition. This exact question was decided at an early date in this State in the case of State ex rel. Gibson, Relator, v. Judge of the Circuit Court of the City of St. Louis, 1 Mo. App. 543. The facts in that case show that relator, Gibson, appealed from an adverse judgment of the circuit to the Supreme Court where the cause was reversed and remanded. Gibson then moved the circuit court to enter judgment in accordance with the mandate of the Supreme Court. The circuit court overruled the motion and sent the case to a referee, to hear evidence and make a report upon which the circuit court might proceed to enter judgment. Gibson then sought mandamus in the Court of Appeals to compel the circuit court to enter judgment in accordance with the mandate of the Supreme Court, alleging as grounds therefor the facts above indicated. In refusing to issue the alternative writ, GANTT, P. J., said:

"We are very clear that the writ must be denied. Let it be imagined that it were issued, and that the judge of the St. Louis Circuit Court should return that he had complied with the mandate of the Supreme Court by making the order of which the relator complains; would we have any means of knowing whether that order was indeed a compliance with the mandate? We certainly would have no such means. All that we know, with the least approach (and it is only an approximation) to accuracy, is that the Supreme Court has reversed and remanded the cause for further proceedings in the circuit court. It would be a strange departure from the rule which enjoins the utmost precision of statement when an extraordinary writ is asked for, to grant such a remedy upon allegations like this. If it be said that, an alternative writ being granted, all the merits of the matter will appear by the return made to it, the answer is that such merits should appear in the first instance. Besides, suppose the judge should decline to show cause altogether, we would have nothing but conjecture to warrant the issue of a peremptory writ, yet the obvious dictate of propriety is that an alternative writ should not be granted until and unless it is made to appear that the applicant is entitled to it, unless cause be shown to the contrary."

In the case of Parrish v. Reed, Auditor, 27 Pac. 230, 231-2, the Supreme Court of Washington refused to issue an alternative writ of mandamus on the ground that the petition for the writ did not show prima facie a cause for its issuance. We call attention to what was said by HOYT, J., in a concurring opinion in that case:

"I fully concur in what has been said by the chief justice in deciding this case, and I do not desire to add anything as to the merits of the controversy; but, in view of what was said by the attorneys for the petitioner at the time of the application for the writ, to the effect that they supposed the alternative writ would issue almost as a matter of course, I desire to say a word as to the course and

practice of this court in matters of this kind. The writ of mandate is not a writ of right of as high an order as a writ of *habeas corpus.* The latter writ is, of course, of the very highest right, and is regarded of such importance that it is secured and protected by the constitutions of nearly all the states. Yet even the writ of *habeas corpus* does not issue as a matter of course. The facts alleged in the petition therefore must be such that, if true, they would, in the opinion of the court, warrant the discharge of the petitioner. The facts stated in the petition are taken as true, and the court determines therefrom whether or not they would warrant a discharge of the petitioner, and if, in its opinion, they would not do so, then the courts do not hesitate to refuse even this writ of highest right. [See Church, Hab. Corp., sec. 99.] If this is true as to the writ of *habeas corpus,* it follows that the courts will scrutinize somewhat carefully the allegations of the petition for a writ of mandate, which is not a writ of such high right, and will only grant the alternative writ when, in its view of the law, the facts stated in the petition, if uncontradicted, will authorize the issue of the peremptory writ. Such has been the practice of the courts of nearly all the states of this Union. The practice of this court has been to allow counsel for the petitioner at the time he makes application for the alternative writ to make such brief suggestions as he may think proper, and with such suggestions the court takes the papers, and if, in its opinion, a prima facie case is established, orders the issue of the alternative writ; and if, in its opinion, such petition does not set out facts constituting a prima facie case for the issue of the mandatory writ, it denies the application for the alternative writ, and dismisses the petition. In this case, however, the court realized the great importance of the questions involved, and although upon an inspection of the papers it was satisfied that a prima facie case was not made out, departed from its usual custom, and notified counsel for the petitioner that they might present arguments in support of the petition, which was done; and able counsel, at such length as they saw fit, argued as to the sufficiency of the petition to warrant the issuing of the writ. After such argument, the court being still of the opinion that the petition did not state facts warranting the issue of the writ, could not do otherwise than refuse it. It cannot be held that the Legislature intended in providing for writs of mandate that any person simply by coming into court and filing a petition without any merit therein could properly put a public officer to the expense of employing counsel and making a return to an alternative writ issued upon such insufficient petition.''

In 38 Corpus Juris, page 909, section 653, the rule is thus stated:

''It is the usual practice to issue an alternative writ when the petition or affidavit makes a prima facie case therefor. The writ will

be denied where it appears that a peremptory writ should not issue, thus avoiding delay and expense to the parties."

Ferris on Extraordinary Legal Remedies, page 286, sec. 241, states the rule as follows:

"When the petition shows a prima facie case, and is in proper form and sufficient in substance, an alternative writ may be awarded upon it."

Relator relies on State ex rel. Attorney-General v. The Missouri Pacific Railroad Company, 114 Mo. 283, 289, 21 S. W. 813, in support of his contention that it is the mandatory duty of a court to issue an alternative writ upon the filing of the petition.

As we read that case it does not support relator's contention. In that case application was made for mandamus. Before the issuance of the alternative writ, the respondent voluntarily appeared and raised the point that the application for the writ did not show, prima facie, a cause for the issuance of an alternative writ. Concerning such voluntary appearance and practice, we said: "While formerly this practice seemed to have obtained at common law, the rule being that if it be perfectly apparent that the relator is not entitled, the writ was refused, but if it appeared only doubtful, the writ was granted (Moses on Mandamus, pp. 201, 202), in this court such practice is without precedent. It is customary for us to have all issues whether of law or fact raised and determined upon the return to the alternative writ, and we see no good reason for departing from the rule in this case."

As we interpret this case, it holds that if and when the writ issues, the respondent may then come in and raise all questions of law and fact on the return to the writ. This is a correct holding because there is no case against respondent until a writ issues. The case neither discusses nor determines the authority of a court to refuse an alternative writ where the petition does not state, prima facie, a cause for its issuance. Neither does it hold that it is customary to issue the alternative writ regardless of the sufficiency or insufficiency of the petition therefor. All it holds is that the party against whom the writ is asked is not entitled to appear and raise questions of law or fact until a writ issues. If the writ does not issue, there is no occasion for the party's appearance.

The law gives circuit courts jurisdiction of mandamus proceedings. Section 10705, Revised Statutes 1929, provides that the Circuit Court of Cole County shall have jurisdiction of mandamus proceedings against the Secretary of State to compel him to receive and file referendum petitions. For reasons heretofore stated which we will not repeat, we hold that a circuit court having jurisdiction of a mandamus proceedings, has authority to determine whether or not a petition for mandamus states facts sufficient to authorize the issuance of the writ. The determination of that question, whether

right or wrong, is a judicial act which cannot be controlled by mandamus.

Relator contends that his remedy by appeal is inadequate and for that reason he is entitled to a remedy by mandamus.

We find loose statements in the books that mandamus will lie where no other remedy is provided, or where the remedy provided is inadequate. This statement, without qualification, is misleading. There are cases where mandamus will not lie even though the aggrieved party is without remedy. It must be kept in mind that there are certain judicial acts which cannot be controlled by mandamus. ■

The rule is that mandamus will lie where no other remedy is provided, or where the remedy provided is inadequate, if the subject matter of the aggrieved party's complaint is the character of act that is by law subject to control by mandamus. If the act complained of is not by law subject to control by mandamus, necessarily the writ will not go even though the aggrieved party is without remedy.

As applied to inferior courts the writ will go when such court refuses to act in respect to a matter within its jurisdiction when it is its duty to act, that is, when its refusal is, in effect, a failure to perform a duty within its jurisdiction, as "when an inferior court, having jurisdiction of the subject matter and of the parties, misconceives its jurisdiction or power in the premises, and by mistake of law, erroneously deciding as a matter of law and not as a decision on the facts, either refuses to entertain jurisdiction at all, that is, refuses to hear a cause on what is termed a preliminary objection, when by law it ought to do so, or where having obtained jurisdiction, refuses to proceed in the exercise thereof to a determination of the merits, and there is no other adequate remedy by appeal or writ of error, it may be compelled to do so by mandamus." [Ferris on Extraordinary Legal Remedies, pp. 403-4, sec. 300.] But where a court has jurisdiction of the subject matter and of the parties, mandamus will not go to compel such court to decide in a particular manner or to reverse any decision it may make within the limits of its lawful jurisdiction, although the party aggrieved by such decision may be without remedy. As said by the Supreme Court of the United States in the case of In re Rice, Petitioner, 155 U. S. 396, 403, "The writ of mandamus cannot be used to compel the court below to decide a matter before it in a particular way, or to review its judicial action had in the exercise of legitimate jurisdiction. The writ cannot be used to perform the office of an appeal or writ of error, even if no appeal or writ of error is given by law. [American Construction Company v. Jacksonville Railway, 148 U. S. 372, 379.]"

■ In the case at bar, the Circuit Court of Cole County had jurisdiction of the petitioner and of the subject matter. That court did not decide that it was without jurisdiction, or refuse to entertain

jurisdiction of the case. On the contrary, it assumed jurisdiction of the cause, set it for hearing on July 29, 1933, and on that day gave petitioner a hearing on his application for the writ, and the matter was fully presented and argued. After giving due weight and consideration to all of the facts and circumstances, as well as the law applicable, and arguments presented, the court entered of record an order denying the issuance of the alternative writ and dismissing the petition therefor. It appears from the record that the circuit court denied the alternative writ on the ground that House Bill 23 was not subject to referendum, and for that reason the petition did not state, prima facie, a cause for the issuance of the writ.

We are not holding whether the petition filed in the circuit court did or did not state a cause for the issuance of an alternative writ of mandamus. What we do hold is that the circuit court had jurisdiction to determine that question, the determination of which is a judicial act which cannot be controlled by mandamus. Where, as here, a circuit court has jurisdiction of the subject matter and of the parties, mandamus will not go to compel a particular decision, or to review a judicial decision made in the exercise of lawful jurisdiction. Petitioner's remedy, if any, lies in other directions.

Our alternative writ, having been improvidently issued, should be quashed. It is so ordered. All concur, except *Hays J.*, absent.